UNITED STATES DISTRICT COURT,

CENTRAL DISTRICT OF CALIFORNIA

**LATASHA INIZ ROUGELY,**
**Petitioner,**

**v.**

**MICHAEL PALLARES,**
**Respondent.**

**No. CV 21-07555 KS**

**MEMORANDUM OPINION AND ORDER**

**INTRODUCTION**

On September 16, 2021, Latasha Inez Rougely ("Petitioner"), a California state prisoner proceeding *pro se*, filed a Petition for Writ of Habeas Corpus by a Person in State Custody pursuant to 28 U.S.C. § 2254 (the "Petition"). (Dkt. No. 1.) On November 15, 2021, Respondent filed an Answer. (Dkt. No. 7.) On November 30, 2021, both parties consented to the jurisdiction of the undersigned United States Magistrate Judge for all further proceedings in this matter. (Dkt. Nos. 9, 10.) No reply having been filed within the allotted time, the matter is ready for decision without oral argument.

//

//

## PROCEDURAL BACKGROUND

On October 29, 2018, a Ventura County Superior Court jury convicted Petitioner and her two co-defendants of residential burglary, conspiracy to commit residential burglary, and grand theft of a firearm (Cal. Super. Ct. No. 2018007143). (Pet. at 2; Reporter's Transcript ("RT") at 2706-08.) On December 14, 2018, the trial court sentenced Petitioner to seventeen years in state prison. (Pet. at 2; RT at 2842.)

The pending Petition raises a single claim concerning the dismissal of an African American juror under *Batson v. Kentucky*, 476 U.S. 79 (1986). Petitioner raised this claim on direct appeal in the California Court of Appeal. (Dkt. No. 8-20.) On June 25, 2020, the California Court of Appeal issued a reasoned opinion rejecting *inter alia* Petitioner's *Batson* claim and affirming the trial court's judgment in full.[1] (Dkt. 8-23.) On September 23, 2020, the California Supreme Court denied review of the state appellate court's decision without comment or citation. (Dkt. Nos. 8-24, 8-25.)

## FACTUAL BACKGROUND

### I. Facts of the Offense

The facts underlying Petitioner's conviction are not at issue, therefore, the Court summarizes those facts below as outlined in the state court of appeal's recitation of the facts.[2] On July 9, 2017, the burglary victim returned home to her house in Thousand Oaks to find that doors and windows were damaged and the house had been ransacked. (Dkt. No. 8-23 at 2-3.)

---

[1] The state court of appeal remanded to the trial court with directions to exercise its discretion to impose or strike prior serious felony enhancements and amend the abstract of judgment upon resentencing. (Dkt. No. 8-23 at 26.) The resentencing issues have no bearing on the current federal habeas Petition.

[2] "[A] determination of a factual issue made by a State court shall be presumed to be correct" unless rebutted by the petitioner by clear and convincing evidence. *Slovik v. Yates*, 556 F.3d 747, 749 n.1 (9th Cir. 2009).

Missing from the house was approximately $15,000 in jewelry, a GoPro camera, an assault rifle in a camouflage case, and a pillowcase. (*Id.* at 3.) The neighbor across the street witnesses a "young African-American man" wearing a white t-shirt get into a white Buick Sedan. The neighbor followed the Buick and took a picture of the license plate. The neighbor also had eight surveillance cameras, including one pointed toward the victim's home. (*Id.*)

The surveillance video helped the police identify Petitioner and her codefendants as the perpetrators. (*Id.* at 3-4.) Cell phone records led the police to Petitioner's residence, where they found the Buick from the burglary. (*Id.* at 4-5.) The police eventually effected a traffic stop while Petitioner was driving the Buick and during the stop, one detective positively identified Petitioner as one of the individuals on the surveillance video. (*Id.* at 5.) The officers searched the trunk of the Buick and found the victim's GoPro camera. (*Id.*) Officers searched Petitioner's apartment and found the stolen pillowcase and jewelry. (*Id.*) Police obtained a search warrant for Petitioner's phone, which contained several photographs taken after the burglary in which Petitioner was wearing the same clothing and had the same hairstyle as depicted on the surveillance camera footage. There were also several photos on Petitioner's phone depicting the stolen assault rifle. (*Id.* at 5-6.) On the day of the burglary, Petitioner's texts to her codefendants and Internet searches were consistent with her planning a burglary. (*Id.* at 6.) Police identified and located Petitioner's codefendants by searching various Facebook accounts. (*Id.* at 6-7.)

Neither Petitioner nor her co-defendants testified at trial. (RT 2264-65, 2275.)

## II. Facts Relevant to Petitioner's *Batson* Claim

All three defendants were African American. (Dkt. No. 8-23 at 9.) Voir dire in Petitioner's case took place over two court days and involved one panel of jurors. (RT at 605-1012.) The prosecution and defense initially stipulated to twelve jurors, randomly selected

from the panel, and the trial court began voir dire by having those prospective jurors answer a questionnaire. (RT 608-23.) The attorneys were then permitted to question the jurors individually before making challenges for cause. (RT 623-60.) After the parties exhausted their challenges to the twelve seated and questioned jurors, new jurors were called from the jury pool to fill open seats. (RT 661-67.) The resulting group of newly seated jurors underwent the same process before the attorneys could exercise their peremptory challenges. (RT 661–67, 753.) This process continued until the prosecution and defense accepted twelve jurors and three alternate jurors. (RT 667-1012.)

Before prospective Juror M.[3] was called on the morning of October 4, 2018, the prosecution exercised five of its peremptory strikes, and defense counsel had collectively exercised six peremptories without issue. (*Id.*) When Juror M. was called, she answered the questionnaire as all seated jurors had done, noting a conviction of driving under the influence of alcohol from the previous year. (RT 976.) When the defense questioned Juror M., Petitioner's counsel asked the following:

> [PETITIONER'S COUNSEL]: Ms. M., in regards to your DUI . . . do you have any hard feelings based on the fact — it sounds like you pled guilty and accepted —
>
> PROSPECTIVE JUROR M.: Yes.
>
> [PETITIONER'S COUNSEL]: — a conviction for drunk driving; right?
>
> PROSPECTIVE JUROR M.: Yes.
>
> [PETITIONER'S COUNSEL]: Well, when you run across somebody and they tell you, for example, that they're taking their DUI to trial, do you somehow hold that against them?
>
> PROSPECTIVE JUROR M.: No.

[3] Juror M. was a single mother living in Oxnard with her parents and daughter. She was a sales manager at Nike and had no prior experience serving on a jury. (RT 976)

[PETITIONER'S COUNSEL]: Are you holding anything against the three defendants in this case because they're exercising their right to go to trial?

PROSPECTIVE JUROR M.: No.

[PETITIONER'S COUNSEL]: And you didn't.

PROSPECTIVE JUROR M.: No.

[PETITIONER'S COUNSEL]: No.

PROSPECTIVE JUROR M.: That was my decision. I knew what I did wrong, so at the time, I pled guilty.

[PETITIONER'S COUNSEL]: What if somebody thinks that they're not guilty, and they want their trial? Do you hold that against them because of what you've been through with your personal experience?

PROSPECTIVE JUROR M.: No. We're all different people. We all want different things and know what we want.

(RT 983–84.) Later, the prosecution also focused on Juror M.'s DUI:

[PROSECUTOR]: Was that in this county, the DUI?

PROSPECTIVE JUROR M.: Yes.

[PROSECUTOR]: Okay. And all along the way — and what agency was it, if you don't mind me asking.

PROSPECTIVE JUROR M.: Who pulled me —

[PROSECUTOR]: That pulled you over.

PROSPECTIVE JUROR M.: It was the sheriff.

[PROSECUTOR]: Okay. And did you feel like you were treated completely fairly throughout the process?

PROSPECTIVE JUROR M.: Yes.

[PROSECUTOR]: Okay. And you came into court and dealt with it accordingly.

PROSPECTIVE JUROR M.: Definitely.

[PROSECUTOR]: And of course in the courtroom, I'm guessing it wasn't me, but there was probably somebody else from my office in that courtroom.

PROSPECTIVE JUROR M.: I wasn't in the court. My lawyer took care of everything.

[PROSECUTOR]: Okay. So there's no hard feelings with the sheriff's office, no hard feelings with my office, nothing like that?

PROSPECTIVE JUROR M.: No.

[PROSECUTOR]: Well, your attorney came to court and handled it for you. Do you think it's also possible that people can plead not guilty and be guilty?

PROSPECTIVE JUROR M.: Yeah.

(RT 988–89.) Defense counsel passed on exercising their peremptories. (RT 992.) The prosecution then exercised two of its peremptories, one of which was to dismiss Juror M. (RT 993.) The Court asked Juror M. to wait outside the courtroom and held a brief bench conference, followed by a *Batson-Wheeler*[1] motion brought by Petitioner's counsel. (RT 993.)

Petitioner's counsel argued that Juror M. was "the only juror that's made it to the box so far that appears to be African-American," who had a "great background" and "expressed absolutely no anger or no resentment toward law enforcement." (*Id.*) Counsel also argued, "We have three African-American jurors, and we have a sea of non-African-American jurors, and when the first one comes up, she's dismissed . . . ." (*Id.*) The trial court then asked the two other defense counsel whether they joined the motion, to which the first responded:

[DEFENSE COUNSEL 1]: I would join along with [Petitioner's Counsel] and ask the Court to accept all of [Juror M.'s] representations as mine as well and to point out to the Court that I couldn't figure out one answer she gave

[1] *People v. Wheeler*, 22 Cal. 3d 258 (1978), is the California companion case to *Batson*. *Paulino v. Harrison*, 542 F.3d 692, 695 n.1 (9th Cir. 2008).

> to any question that would seemingly disqualify her. She appeared to be, quote, "a perfect juror" for both sides in the matter. [¶] She didn't say anything remotely close to disqualifying her from [the prosecutor's] questions, and I was kind of shocked and surprised he dismissed her.

(RT 994.) Remaining defense counsel joined in the motion and also expressed surprise at the prosecution's decision to dismiss Juror M. (RT 995.) The trial court, based on the comments of defense counsel and its own observations, found that defense counsel had made a prima facie case of discrimination. (*Id.*) The court then asked the prosecutor for its reasons for dismissing Juror M., and this discussion followed:

> [PROSECUTOR]: . . . My concern with [Juror M.] was specifically that just a year ago, she got a DUI. My belief is she's currently on probation for said —
>
> THE COURT: But you didn't ask her that question.
>
> [PROSECUTOR]: You are correct, but I know our office's policy, so I did assume that. That was my thought process.
>
> THE COURT: Your office policy doesn't run the world.
>
> [PROSECUTOR]: You are correct, your Honor, but that was my thought process when I made this decision, and I think —
>
> THE COURT: So you excused her because why? Because you thought she might be on probation, and you didn't ask her?
>
> [PROSECUTOR]: No, your Honor. I excused her because she has a DUI. She had interactions with the police and my office because of that DUI, and then when I asked her the question regarding do you think people that plead not guilty can be guilty, I saw a lot of — she hesitated before she answered the question. [¶] When I believe Mr. Schwartz was talking to her about beyond a reasonable doubt and if I meet my burden, she hesitated when she was answering those questions. So based on that, that was my thought

> process in excusing her, and that was the — those were the reasons why I did it and for no other reason. Or at least no other racially related reasons. I don't think that went into my decision at all.

(RT 995-96.) In response, the defense, excluding Petitioner's counsel, argued that they had not noticed any hesitation by Juror M. during questioning. (RT 996.) The trial court shared defense counsel's surprise at the prosecution's dismissal of Juror M., but ultimately denied the *Batson-Wheeler* motion on the following ground:

> THE COURT: I did say at the bench that I was shocked that [the prosecutor] excused that juror. However, jurors may be excused on a party's belief in whether or not they'll be a fair and impartial juror without any reference to a particular class of people, and I think in this case, while I and perhaps others may think that [the prosecutor's] observations might be questionable, I don't think they're unreasonable under the circumstances, and, for that reason and no other, the defense motion is denied.

(RT 996.) The trial court then ordered that Juror M. be excused. (*Id.*) When voir dire continued, additional jurors were called and questioned by counsel for all the parties, who then were given the opportunity to exercise further peremptory strikes. (RT 1013–54.) Among those jurors was Juror TJ11.[4] (RT 1013.) At some point during questioning, it was revealed that Juror TJ11 had previously been arrested for a DUI (RT 1022), and this conversation ensued:

> [JUROR TJ11]: I've been arrested, and I have a tattoo.
>
> [PETITIONER'S COUNSEL]: Okay. What were you arrested for?

---

[4] From Thousand Oaks, Juror TJ11 was a business manager for Capital Group, who was married without children. (RT 1013.) She had no prior jury experience. (*Id.*) While being questioned by Petitioner's counsel, she noted that she was nervous and that her voice was cracking. (*Id.*)

[JUROR TJ11]: DUI.

[PETITIONER'S COUNSEL]: DUI. And when was that?

[JUROR TJ11]: Nine years ago.

[PETITIONER'S COUNSEL]: So you're off — there's no probation. That's like off your mind. You're not even thinking about that anymore.

[JUROR TJ11]: Right.

[PETITIONER'S COUNSEL]: Do you hold it against — let me back up. Did you take that to trial?

[JUROR TJ11]: No.

[PETITIONER'S COUNSEL]: You pled guilty?

[JUROR TJ11]: Yeah. No contest, yeah.

[PETITIONER'S COUNSEL]: No contest. [¶] Do you hold it against any of the defendants here because they are exercising their right to go to trial because they feel they're not guilty?

[JUROR TJ11]: No.

[PETITIONER'S COUNSEL]: Since you accepted responsibility, shouldn't they? Shouldn't everybody in the world that's charged with a crime?

[JUROR TJ11]: I did. I don't have any bias towards them for not.

[PETITIONER'S COUNSEL]: Because if you're arrested for a crime, charged and a jury is brought from the jury room downstairs up here, they're still presumed innocent; correct?

[JUROR TJ11]: Right.

[PETITIONER'S COUNSEL]: You could be fair?

[JUROR TJ11]: Yes.

[PETITIONER'S COUNSEL]: And impartial?

[JUROR TJ11]: Yes.

(RT 1022-23.) The prosecutor also asked additional questions regarding Juror TJ11's DUI:

> [PROSECUTOR]: [Juror TJ11], I have to ask some follow-up questions. Nine years ago, you got a DUI. What county was it in?
>
> [JUROR TJ11]: L.A. I guess. It was Redondo Beach.
>
> [PROSECUTOR]: Okay. How did that go? Were you treated fair[ly] by law enforcement?
>
> [JUROR TJ11]: Yeah.
>
> [PROSECUTOR]: And do you think the entire process was okay for you?
>
> [JUROR TJ11]: Uh-huh.
>
> [PROSECUTOR]: Now, you were on probation, and you're no longer on probation?
>
> [JUROR TJ11]: Yeah. I guess it was three years. I don't remember but right.
>
> [PROSECUTOR]: Okay. And do you have any hard feelings — if you happen to see an L.A. officer that stopped you come in to this case, would there be any problems? Would you have any pause with that?
>
> [JUROR TJ11]: No.

(RT 1030–31.) The prosecutor did not excuse Juror TJ11 and that juror ultimately served on the jury. (RT 1055-1108; Dkt. No. 8-23 at 11.)

**III. State Court Decision**

On direct appeal, the state court of appeal denied Petitioner's *Batson* claim. (Dkt. No. 8-23 at 8-14.) After articulating the federal legal standard governing *Batson* claims, the appellate court ruled as follows:

Substantial evidence supports the trial court's [denial of Petitioner's *Batson/Wheeler* motion]. The prosecutor provided the following race-neutral reasons for dismissing [Juror M.]: (1) she was convicted of a DUI "just a year ago" and was likely still on probation; (2) she had "previous interaction with the police and" the Ventura County District Attorney's Office for that offense; (3) the prosecutor believed she hesitated when answering the questions of whether she believed people that pled not guilty can be guilty; and whether she would hesitate in rendering a guilty verdict if the prosecution met its burden of proof. These reasons were not "implausible or fantastic." The trial court found the proffered reasons to be not "unreasonable under the circumstances." We defer to the trial court's credibility determinations.

Appellants contend the prosecutor's acceptance of Juror TJ11 shows that his peremptory challenge of R.M. was racially motivated. Appellants raised their *Batson/Wheeler* claim before Juror TJ11 was questioned, so the trial court did not conduct a comparative juror analysis. Regardless, we must conduct a comparative juror analysis "when reviewing claims of error at *Wheeler/Batson*'s third stage when the defendant relies on such evidence and the record is adequate to permit the comparisons." There are, however, "inherent limitations" to doing so on a "cold appellate record."

These "inherent limitations" are apparent here. The record does not disclose the race of Juror TJ11. We are bound by the record before us, and we are unable to meaningfully review the claim of error without an adequate record.

Even assuming Juror TJ11 was White, we conclude there was no error. Although [Juror M.] and Juror TJ11 both had prior DUI offenses, Juror TJ11's

DUI occurred nine years prior, whereas [Juror M.'s] DUI occurred one year prior. The prosecutor reasonably believed [Juror M.] was still serving probation for that offense. Moreover, [Juror M.] was arrested by the Ventura County Sheriff's Office (there were several Ventura County Sheriff's deputies who testified at trial) and was prosecuted by the Ventura County District Attorney's Office. In contrast, Juror TJ11 was arrested (and presumably prosecuted) in Los Angeles County. These are "material differences" which support the prosecutor's race-neutral reasons to excuse [Juror M.].

(Dkt. No. 8-23 at 12-14 (citations omitted).)

**STANDARD OF REVIEW**

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") bars re-litigation of any claim adjudicated on the merits in state court except where the state court's previous adjudication of the claim resulted in a decision that was either (1) contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or (2) based on an unreasonable determination of the facts in light of the evidence presented at the State Court proceeding. 28 U.S.C. § 2254(d). *See also White v. Woodall*, 572 U.S. 415, 419 (2014); *Harrington v. Richter*, 562 U.S. 86, 98 (2011).

"[C]learly established Federal law" in the context of § 2254(d) refers only to Supreme Court holdings established at the time of the state court's adjudication. *Shoop v. Hill*, 139 S. Ct. 504, 506 (2019). Within that limited universe of precedent, a Supreme Court decision must "squarely address the issue in the case" before the state court or "establish a legal principle that clearly extends to a new context" in order for it to be relevant. *Varghese v. Uribe*, 720 F.3d 1100, 1106 (9th Cir. 2013) (citation omitted); *see also Richter*, 562 U.S. at

101 (holding that it is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by the Supreme Court) (citation omitted).

Under § 2254(d), a state court's decision is "contrary to" federal law only (1) if it fails to apply the correct controlling authority or (2) if it applies the controlling authority to a case involving facts "materially indistinguishable" from those in the controlling case, but nonetheless reaches a different result. *Early v. Packer*, 537 U.S. 3, 8 (2002) (citing *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000)). Separately, a state court unreasonably applies clearly established federal law under § 2254(d)(1) "if it either (1) correctly identifies the governing rule but then applies it to a new set of facts in a way that is objectively unreasonable, or (2) extends or fails to extend a clearly established legal principle to a new context in a way that is objectively unreasonable." *Deweaver v. Runnels*, 556 F.3d 995, 997 (9th Cir. 2009) (*citing Williams*, 529 U.S. at 408–09). Further, § 2254(d)(1)'s unreasonable application clause warrants relief only if the question of whether an established rule applies to a given set of facts precludes any disagreement among "fairminded" jurists. *Richter*, 562 U.S. at 103 (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

When conducting AEDPA's deferential review, the federal habeas court must look to the last reasoned state-court decision. *Cannedy v. Adams*, 706 F.3d 1148, 1158 (9th Cir. 2014) (as amended), 733 F.3d 794 (9th Cir. 2013). In this case, the California Court of Appeal's reasoned opinion is the relevant decision for purposes of § 2254(d) review. *See Berghuis v. Thompkins*, 560 U.S. 370, 378–80 (2010) (holding that in cases where the intermediate state appellate court denies claim on merits and state supreme court then denies discretionary review, the "relevant state-court decision" for purposes of § 2254(d) is that of intermediate state appellate court).

//

Finally, in deciding whether habeas relief is warranted, the reviewing federal court must presume the state court's factual determinations to be correct, absent clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1); *see also Cook v. Kernan*, 948 F.3d 952, 974 (9th Cir. 2020).

**DISCUSSION**

Petitioner asserts that the trial court violated her right to due process and a fair trial by an impartial jury by denying her *Batson-Wheeler* motion alleging that the prosecution decision to dismiss the sole African American juror was race-motivated. Petitioner argues that the prosecutor provided an insufficient race-neutral justification for dismissing the juror, and that the trial court erred by accepting it. (Dkt. No. 1 at 5-9.)

As quoted above, in the last reasoned state court decision denying Petitioner's claim on the merits, the California Court of Appeal, found substantial evidence supporting the trial court's acceptance of the prosecutor's race-neutral reasons for dismissing Juror M. (Dkt. No. 8-23 at 12-14.) For the reasons discussed below, the Court finds that the state appellate court's analysis and conclusion were not contrary to, or unreasonable applications of, clearly established Supreme Court precedent. 28 U.S.C. § 2254(d). Therefore, Petitioner is not entitled to habeas relief.

## I. Applicable Federal Law

The purposeful exclusion of jurors from jury service based on race violates the Equal Protection Clause of the United States Constitution. *See Batson v. Kentucky*, 476 U.S. at 96-97. When a party alleges that a prospective juror has been unconstitutionally excluded on account of race, the trial court must follow the three-step analytical framework established in *Batson* to determine whether a juror was improperly excluded from the jury:

> First, a defendant must make a prima facie showing that a peremptory challenge has been exercised on the basis of race. Second, if that showing has been made, the prosecution must offer a race-neutral basis for striking the juror in question. Third, in light of the parties' submissions, the trial court must determine whether the defendant has shown purposeful discrimination.

*Miller-El v. Cockrell*, 537 U.S. 322, 328–29 (citations omitted). "[T]he ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the [defendant]." *Purkett v. Elem*, 514 U.S. 765, 768 (1995) (per curiam). The defendant must show that race was a "substantial motivating factor" in the prosecutor's decision to strike a prospective juror. *See Cook v. LaMarque*, 593 F.3d 810, 815 (9th Cir. 2010).

At *Batson*'s third step, the trier of fact must examine all "circumstantial and direct evidence of intent" and evaluate the persuasiveness of the prosecutor's race-neutral justifications for dismissing a juror. *Batson*, 476 U.S. at 93 (citation and internal quotation marks omitted); *see also Purkett,* 514 U.S. at 768.

**II. Analysis**

Petitioner's counsel brought the *Batson-Wheeler* motion, alleging that the prosecution's use of a peremptory challenge to dismiss Juror M. was improperly race-motivated. (RT 993.) The trial court closely followed the three-step *Batson* analysis in considering defense counsel's motion regarding Juror M. (RT 993-96.) The court heard defense counsel's argument, found that it established a prima facie case of discrimination, and then heard the prosecution's race-neutral reasons for dismissing Juror M. (*Id.*) The trial court then made a reasonable determination that the defense had not met its burden of persuasion regarding the purported racial motivation behind the prosecution's dismissal of Juror M. 28 U.S.C. § 2254(a); *Richter*, 562 U.S. at 103.

When asked about its decision to dismiss Juror M., the prosecution provided two race-neutral reasons. The prosecutor argued that Juror M. had been convicted of a DUI "just a year ago," which involved interactions with law enforcement and the prosecutor's own office. (RT 995.) This is a "clear and reasonably specific explanation of [the prosecutor's] legitimate reasons for exercising the challenge[]." *Batson*, 476 U.S. at 97 n.20 (citing *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 258 (1981) (internal citations omitted)). That justification alone renders the state court's decision reasonable under *Batson*. *Cook v. LaMarque*, 593 F.3d at 815.

The prosecutor's other articulated concern was an alleged hesitation by Juror M. when responding to certain questions — specifically, when the prosecution asked whether she believed that people that plead not guilty can be guilty. (RT 995-96.) In response, the trial court noted that it found the prosecution's observations "questionable," but reasonable under the circumstances. (RT 996.) In the typical peremptory challenge inquiry, the "decisive question" is one of credibility due to a scarcity of evidence. *Miller-El*, 537 U.S. at 339. "As with the state of mind of a juror, evaluation of the prosecutor's state of mind based on demeanor and credibility lies peculiarly within a trial judge's province." *Id.* Accordingly, when reviewing a state court's findings as to purposeful discrimination, the inquiry is not whether the federal court agrees with the determination, but whether the state court's determination was reasonable. *McDaniels v. Kirkland*, 813 F.3d 770, 779 (9th Cir. 2015) (citing *Miller-El*, 545 U.S. at 240–52); *see also* 28 U.S.C. § 2254(d)(2). There are "any number of bases on which a prosecutor reasonably may believe that it is desirable to strike a juror who is not excusable for cause," and the prosecutor's stated concern about Juror M.'s alleged hesitation – while not a fact that was agreed upon by all counsel who were present – is still a reasonable, race-neutral basis. *Batson*, 476 U.S. at 97 n.20; *Miller-El*, 537 U.S. at 339.

//

Petitioner bases her argument at least in part on a juror comparison analysis between Juror M. and Juror TJ11. (Dkt. No. 1 at 7-9.) The Court notes that defense counsel had no knowledge of Juror TJ11 or that the prosecutor would accept Juror TJ11 to the panel at the time the *Batson-Wheeler* motion was brought. However, a federal court's review of whether the state court's determination was reasonable includes such "side-by-side comparisons." *Cook v. Lamarque*, 593 F.3d at 815. "If a prosecutor's proffered reason for striking a black panelist applies just as well to an otherwise-similar nonblack who is permitted to serve, that is evidence tending to prove purposeful discrimination to be considered at *Batson*'s third step." *Miller-El*, 545 U.S. at 241.

As the California Court of Appeal explained, Juror TJ11[5] and Juror M. both had DUIs, but Juror TJ11's DUI had occurred nine years prior, and Juror M.'s DUI had occurred only one year prior. (Dkt. No. 8-23 at 14; *see also* RT 1030-31.) Additionally, Juror TJ11's DUI occurred in Redondo Beach; she was arrested and prosecuted in an entirely different county and by a different law enforcement entity than those involved in Petitioner's trial. (*Id.*) Juror M.'s DUI, however, happened in the county where this case was being tried and was handled by the same prosecutor's office involved in the present case. (*Id.*) The Court finds these differences are material, as the prosecutor could have reasonably concluded Juror M., and not Juror TJ11, could have harbored resentment toward local law enforcement and prosecutors. That material difference renders the prosecutor's decision to excuse Juror M. and accept Juror TJ11 reasonable, substantially race-neutral, and accordingly, the state appellate court's conclusion was neither contrary to, nor an unreasonable application of, clearly established Federal law. U.S.C. § 2254(a); *Richter*, 562 U.S. at 103.

Accordingly, habeas relief is not warranted on Petitioner's *Batson* claim.

//

---

5 Juror TJ11's race is not noted on the record, but Petitioner asserts that she was white. (Dkt. No. 8-23 at 10 n.3.)

**ORDER**

For all of the foregoing reasons, IT IS ORDERED that the Petition is denied and Judgment shall be entered dismissing this action with prejudice.

DATED: July 27, 2022

KAREN L. STEVENSON
UNITED STATES MAGISTRATE JUDGE